ROBERT W. CIMA AND GWEN M. CIMA, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cima v. Commissioner
Docket No. 38158-84.
United States Tax Court
T.C. Memo 1987-284; 1987 Tax Ct. Memo LEXIS 284; 53 T.C.M. (CCH) 1028; T.C.M. (RIA) 87284; June 9, 1987. Edward R. Joyce, for the petitioners. Donald L. Wells, for the respondent. GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION GERBER, Judge: Respondent, by a statutory notice of deficiency, dated August 15, 1984, determined a $7,118.35 deficiency in petitioners' 1980 income tax and a $3,559.18 addition to tax under section 6653(b). [1] Respondent, by a February 11, 1986, amendment to answer, claimed a $6,010.04 increase to the income tax deficiency and a $3,005.02 increase to the addition to tax. [2] The issues presented for our consideration are: (1) Whether petitioners received and failed to report $21,500 in income from a monetary pyramid; (2) Whether petitioners received and failed to report $5,368.10 in income from a commodities trading account; (3) Whether petitioner, Robert W. Cima, received and failed to report $1,201.24 *285 in income attributable to his employer's profit sharing plan; (4) Whether petitioners received and failed to report $51.60 in interest income; and (5) Whether petitioners' failure to report income and the underpayment of tax, if any, was fraudulent within the meaning of section 6653(b). FINDINGS OF FACT The evidence was received at trial. Petitioners, Robert W. Cima (Robert) and Gwen M. Cima (Gwen) resided in Fenton, *286 Missouri, at the time of filing their petition in this case. Robert and Gwen are married and filed a joint Federal income tax return for the 1980 taxable year. During the 1980 taxable year petitioners had two sons, Robert, Jr., and Michael, ages 11 years old and less than 11 years old, respectively. Robert was an industrial engineer with Chrysler Corporation and Gwen was a secretary. Robert had taken some business and accounting courses in his college education. The Business Men's Venture (BMV), a monetary pyramid, was popular in the St. Louis, Missouri, area during 1980. Involvement in the pyramid required the investment of $1,000, comprised of two $500 checks. Five hundred dollars went to the secretary as a membership fee and $500 went to a sponsor. The new member or investor finds two additional members and through a chart ordering payment (which looks like a pyramid) various new members may eventually pay up to $64,000 in $500 amounts to each original $1,000 investor. [3] Internal Revenue Service opened a project directed at BMV investors in 1982 and John Doe summonses were issued to 125 financial institutions for copies or originals of cashier's checks, money orders, treasurer's *287 checks and bank drafts in the amount of $500 during a specified four-month period in 1980. About fifty thousand $500 instruments were received and resulted in 465 income tax examinations, of which petitioners were one. *288 Petitioners became involved in BMV during February 1980 by means of a $500 cashier's check remitted by Robert and drawn on Bohemian Savings & Loan Association and a $500 personal check from petitioners' checking account at Commerce Bank of Fenton, signed by Robert. Analysis of petitioners' savings and checking accounts reflected that the source of the two $500 checks was petitioners' payroll checks. Robert was the active participant in BMV and Gwen had a lesser role, mainly handling and/or endorsing some of the $500 checks received. Petitioners remained active in the BMV for a period of time and reinvested in other BMV pyramids when their "leg" of the pyramid dried-up. Robert gave the "club" secretary authority to invest and reinvest. Petitioners kept no records of their BMV activity. Although some of the transactions with respect to BMV were conducted in petitioners' sons' name, petitioners did not report any income from BMV and no returns were filed for either of petitioners' sons for 1980. [4] Respondent, in the statutory notice, determined that petitioners netted $16,000 from the BMV during 1980. At the trial it was shown that petitioners received fifty-eight $500 checks *289 (or a total of $29,000) [5] and paid $7,500 as membership and sponsor fees during 1980. *290 Robert, with an initial deposit of $8,800, [6] opened a commodity trading account with First Commodity Corporation of Boston in the names of petitioners' two sons on April 25, 1980. During 1980, the trading in the commodity account netted $12,568.10 in short-term capital gains, less $7,200 in brokerage commissions for a net short-term capital gain of $5,368.10. The commodity account was closed during 1981 and almost $7,000 was withdrawn and placed in petitioners' savings and checking accounts. Respondent traced most of the final proceeds of the commodity account to Robert and expenditures made in connection with the purchase and improvement of petitioners' vacation home. Robert, who worked for Chrysler Corporation, was concerned about his employer's financial condition and requested redemption of his profit sharing plan Chrysler Corporation stock. On January 28, 1980, Chrysler Corporation issued a $4,078.20 check to Robert. A work *291 sheet furnished in lieu of a Form 1099 reflected that $1,201.24 of the distribution was ordinary income to Robert. Petitioners did not report any part of the $4,078.20 distribution or any income attributable to it on their 1980 Federal income tax return. Petitioners did not report $51.60 of interest income earned on their Bohemian Savings and Loan Association saving account. Robert, during the audit of his 1980 taxable year contended, as he has in this case, that the BMV transactions and income were his son's and that no records were maintained with regard to the BMV transactions. He stated that there was not sufficient income for the sons to file Federal income tax returns. There was no testimony or other credible evidence in this record that reflected that the children were the intended or eventual beneficiaries of the income in question. OPINION Respondent has carried his burden of proving that petitioners are liable for an increased income tax deficiency and petitioners have failed to carry their burden of showing respondent's determination as to the income tax deficiency set forth in the statutory notice to be in error for the 1980 taxable year. ; *292 Rule 142(a). Respondent bears the burden of proving by clear and convincing evidence that some part of an underpayment of tax for the taxable year 1980 was due to fraudulent acts of petitioners in order to sustain the 50-percent addition to tax under section 6653(b). Sec. 7454(a); Rule 142(b). Respondent's burden with respect to fraud is met if it is shown that the taxpayer intended to evade tax known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. , cert. denied ; , affg. a Memorandum Opinion of this Court; . The presence of fraud is a question of fact to be determined from the entire record. , affd. without published opinion . Fraud is never presumed but must be established by affirmative evidence. . It may, however, *293 be proved by circumstantial evidence because direct proof of a taxpayer's intent is rarely available and his entire course of conduct may be examined to determine whether the fraudulent intent is present. ; . Respondent contends that in this case he has carried his burden of proving fraud on the part of petitioners by clear and convincing evidence of the following: (1) Petitioners omitted taxable income from four different sources totaling more than $25,000; (2) Petitioners were not cooperative with respondent's examiners during the audit; and (3) Petitioners failed to keep records of the BMV participation. Petitioners were aware of the taxable nature of the BMV pyramid income. They do not contend that it was not taxable. Instead they contend that the income was that of their minor children. In support of that contention, they have stated that the children's paternal grandfather had advanced the initial investment in BMV and that the proceeds were intended to be kept in trust for the children and their education. After careful review of the *294 record we find this contention is neither supported by the record nor believable. Indeed, respondent has shown that a substantial portion of the BMV and commodity gains were used for improvements to petitioners' home, personal expenses and the purchase and improvement of petitioners' vacation home. There is no evidence whatsoever of the existence of a trust or segregation of the proceeds of BMV or commodity trading for the children's benefit. In fact, petitioners have not even shown that any of the proceeds were ever put aside for the "contended" purpose. Petitioners' attempt to reflect their children as owners or income recipients in BMV or the commodity account was a subterfuge and without substance. Even after respondent's audit and resulting statutory notice reflected that the amount of income from BMV would have required a report of income by the children or their alleged trust(s), petitioners continued to contend that it was the children's income. Following the issuance of the statutory notice, respondent uncovered additional amounts received from BMV, the commodity account gains, the Chrysler Corporation income distribution and the savings and loan interest income, all *295 of which reflect that petitioners were not forthright during the examination process. Petitioners claim their failure to report the interest and Chrysler Corporation distribution were inadvertent, but the record in this case does not support this claim. We find that the substantial omissions, see , affd. without published opinion and the attempts to conceal by use of their children's names and failure to keep records, see , affg. a Memorandum Opinion of this Court, cert. denied , establish clearly and convincingly that petitioners fraudulently underpaid their 1980 Federal income tax within the meaning of section 6653(b). To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954 as amended and in effect during the taxable year in question. All rule references are to this Court's Rules of Practice and Procedure. ↩
2. The total deficiency in dispute, including the increased amounts claimed by respondent, is as follows: Addition to Tax
Income Tax
Sec. 6653(b)
Per Statutory
Notice
$7,118.35
$3,559.18
Increased Amount-
Amended Answer
6,010.04
3,005.02
Total in Dispute
$13,128.39
$6,564.20
Respondent bears the burden of proof with regard to the additions to tax and the $6,010.04 increased income tax amount. Petitioners bear the burden of proof with respect to the $7,118.35 income tax deficiency determined in the statutory notice.↩
3. The Business Men's Venture (BMV) pyramid was described in BMV literature, as follows: Each person pays $1,000 to join the club: a $500 membership fee and a $500 sponsor fee. This new club member then sponsors two other persons to join the club and receives a $500 sponsor fee from each of these persons, thus the new member receives back his/her original investment of $1,000. The membership fees of $500 for each of the two other persons are paid by cashier check to a member exactly seven levels above the point at which a new member joins. Each member's name is maintained by a club secretary on a seven level chart. As the membership continues to grow, each member's name will reach the seventh level. At this level, 128 new members will pay their membership fee for $500 ($64,000 Total) to the member. Rule 6 of the BMV Club Rules states: All income resulting from membership in the club is taxable income and should be reported as "other income" by each individual member. Since the club itself has no income nor expenses it does not report. However, the club does maintain duplicate records of all transactions and can compute the income of each member.↩
4. Petitioners contend that the investment in BMV was made for the benefit of their sons and for the sons' future education. Petitioners also contend that the sons' paternal grandfather had given Robert $1,000 for investment in BMV ($500 for each grandchild). The record as a whole does not bear out petitioners' contentions. The initial investment in BMV came from accounts which respondent was able to show was funded by petitioners' paychecks. Petitioners' sons were 11 years old or younger during 1980 and no formal or written evidence exists of the receipt of money from the grandfather or a trust for the children's benefit. Moreover, no income tax returns were filed for the children and the amounts of income from BMV and the commodity transactions exceeded $25,000 for 1980. Petitioners freely used some of the money for home improvements, including: aluminum siding - $6,300; other home improvements about $1,200 and numerous other checks were negotiated which were not shown to be set aside for petitioners' sons' education or benefit. Petitioners indiscriminately used their own and children's names on various documents, accounts, certificates of deposit which flowed from their original investment in BMV. ↩
5. Respondent amended his answer and sought an increased deficiency (see n. 2, supra↩), part of which was attributable to a $5,500 larger net amount received by petitioners from BMV ($29,000 less $7,500 or a net of $21,500).
6. The $8,800 initial deposit in the commodity account represented most of the proceeds of a $10,000 certificate of deposit which had been placed in the names of petitioners' sons. The certificate of deposit was purchased with BMV proceeds.↩